UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCEANA, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>WILBUR L. ROSS, et al.,<br><br>    Defendants. | Case No. 19-cv-03809-LHK (SVK)<br><br>**ORDER ON PLAINTIFF'S MOTION TO COMPEL COMPLETION OF ADMINISTRATIVE RECORD**<br><br>Re: Dkt. No. 42 |

Oceana, Inc. ("Plaintiff") challenges a final rule setting annual catch limits for the central subpopulation of the northern anchovy (the "Rule") promulgated by the National Marine Fisheries Service ("NMFS"). Dkt 1. Plaintiff brings its challenge under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson Act"), 16 U.S.C. § 1801 *et seq.* In response to Plaintiff's challenge, Wilbur Ross, in his official capacity as Secretary of Commerce; National Oceanic and Atmospheric Administration; and NMFS (collectively, "Defendants") prepared and submitted an Administrative Record ("AR") to Plaintiff, Intervenor-Defendants California Wetfish Producers Association and Monterey Fish Company, Inc., and the Court on September 25, 2019. Dkt. 30.

Before this Court is Plaintiff's motion to compel Defendants to complete the administrative record by adding two categories of materials: (1) scientific research and presentations that NMFS scientists and others developed and presented to NMFS officials; and (2) NMFS scientists' communications, analyses, and draft assessments of the science that NMFS considered during the formulation of the Rule. Dkt. 42 at 1; Dkt. 45 at 1. Defendants oppose the motion on the grounds that the requested materials are not part of the administrative record because NMFS did not consider them, either directly or indirectly, when developing the Rule. Dkt. 44 at 12-14.

Judge Lucy H. Koh referred this motion to the undersigned. Dkt. 40. The Court finds this matter suitable for decision without oral argument pursuant to Civ. L.R. 7-1(b). Having considered the briefs and the relevant legal authority, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to compel completion of the administrative record for the reasons set forth below.

Before setting forth details of the issues presented, the Court briefly addresses a subject, the nature of which is both form and substance. In the papers before the Court, both sides were unable to resist making substantive arguments in footnotes. Footnotes are for references or brief comments for clarification only. In short, "footnotes should not contain things that matter." Hollis T. Hurd, *Writing for Lawyers* 82 (1982). The Court did not read, let alone consider, substantive arguments that either side relegated to a footnote. The Court notes that counsel in this matter are not alone in this transgression, but improvement must start somewhere. The Court will start with counsel at hand.

### I. BACKGROUND

On April 8, 2019, NMFS published a proposed rule titled "Fisheries Off West Coast States; Coastal Pelagic Species Fisheries; Multi-Year Harvest Specifications for the Central Subpopulation of Northern Anchovy" in the Federal Register and requested public comment. AR 292. The public comment period closed on April 23, 2019. AR 264. Subsequently, on May 31, 2019, the final Rule was published in the Federal Register. 84 Fed. Reg. 25196-25202. The Rule set annual catch limits and other reference points for the Pacific sardine, Pacific mackerel, jack mackerel, northern and central subpopulations of the northern anchovy, market squid, and krill. 84 Fed. Reg. 25196. The Rule set an annual catch limit of 23,573 metric tons for the central subpopulation of northern anchovy ("anchovy"). *Id*.

In this lawsuit, Plaintiff alleges that the challenged Rule is not based on the best available science, fails to prevent overfishing, fails to achieve optimum yield, and that Defendants failed to articulate a rational basis for their decisions in violation of the Magnuson Act and the APA. Dkt. 1; Dkt. 42 at 2.

////

## II. LEGAL STANDARD

"Generally, judicial review of agency action is limited to review of the record on which the administrative decision was based." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). "Motions to complete the Administrative Record may be granted where the agency fails to submit the 'whole record.'" *Ctr. for Envtl. Health v. Perdue*, No. 18-cv-01763-RS, 2019 WL 3852493, at *2 (N.D. Cal. May 6, 2019) (citing 5 U.S.C. § 706). "The whole record encompasses all the evidence that was before the decision-making body" including "documents contrary to the agency's position and all documents and materials directly or indirectly considered by agency decision-makers." *Sierra Club v. Zinke*, No. 17-cv-07187-WHO, 2018 WL 3126401, at *2 (N.D. Cal. June 26, 2018) (citations and internal quotation marks omitted). An agency may not exclude information it considered on the grounds that it did not rely on that information. *People ex rel. Lockyer v. U.S. Dep't of Agric.*, No. C05-03508 EDL, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006).

"An agency's designation of the record is presumed complete, but plaintiffs may overcome the presumption by identify[ing] the allegedly omitted materials with sufficient specificity and identify[ing] reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record. *Sierra Club*, 2018 WL 3126401, at * 2 (citing *Oceana, Inc. v. Pritzker*, No. 16-CV-06784-LHK (SVK), 2017 WL 2670733, at *2 (N.D. Cal. June 21, 2017)) (alterations in original and internal quotation marks omitted). The plaintiff can also rebut the presumption of completeness "by showing that the agency applied the wrong standard in compiling the record." *Sierra Club*, 2018 WL 3126401, at * 2 (citing *Oceana*, 2017 WL 2670733, at *2). The plaintiff need not show bad faith or improper motive to rebut the presumption. *Lockyer*, 2006 WL 708914, at *2.

////

////

////

////

////

## III. DISCUSSION

### A. Plaintiff Has Demonstrated that Defendants Applied the Wrong Standard in Compiling the Record

Although the agency bears the initial responsibility to assemble the administrative record, the administrative record "is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record." *Thompson*, 885 F.2d at 555 (citation omitted). Similarly, although an agency's certification of the administrative record is entitled to a strong presumption of regularity, a certification that does not make clear that the record includes all documents and materials directly or indirectly considered by the agency in making its decision "suggests noncompliance with the standard according to which an administrative record should be compiled." *Gill v. Dep't of Justice*, No. 14-cv-03120-RS (KAW), 2015 WL 9258075, at *3-6 (N.D. Cal. Dec. 18, 2015) (holding presumption of completeness rebutted where agency certified that the record contained all information "considered in the development" of the agency action but did not state that all materials directly or indirectly considered by the agency were included).

Here, NMFS assembled the administrative record and filed it with the Court along with a certification signed by senior NMFS Fishery Management Specialist Joshua Lindsay. Dkt. 30-2 ("Certification") ¶ 1. Mr. Lindsay was the primary NMFS staff member responsible for preparing the final version of the 2019 Rule. Certification ¶ 2. Mr. Lindsay is the "custodian of NMFS documents relating to the May 2019 final rule" and "NMFS documents relating to Amendments 8 and 13 to the CPS FMP." Certification ¶ 3. The Certification states that the "[r]ecords composing the administrative record for the 2019 Rule, as well as Amendments 8 and 13 to the CPS FMP, are located in the NMFS West Coast Region office in Long Beach, California." Certification ¶ 4. Under Mr. Lindsay's "direction and supervision, NMFS staff in the Long Beach Office conducted a diligent search for, (sic) and assembled the documents for the administrative record for the 2019 Rule and Amendments 8 and 13 to the CPS FMP." Certification ¶ 5. The Certification states that the record filed with the Court constitutes "a true, correct, and complete copy of the administrative record for the 2019 Rule as well as Amendments 8 and 13 to the CPS FMP and their implementing regulations." Certification ¶ 7.

The Certification fails to identify any criteria used by NMFS staff in their search for and assembly of documents for the administrative record. As a result, the Certification "suggests noncompliance with the standard according to which an administrative record should be compiled," particularly in light of Plaintiff's demonstration that the record excludes certain materials that were indeed considered, either directly or indirectly, by NMFS in preparing the Rule. *See Gill*, 2015 WL 9258075, at \*6; *see also Oceana*, 2017 WL 2670733, at \*2. In opposition to this motion, Mr. Lindsay submits a declaration averring that the administrative record now contains "all documents directly or indirectly considered by agency decision-makers for the Rule." Dkt. 44-2 ¶ 5. Defendants' attempt to amend the Certification is too late and therefore unavailing. *See Gill*, 2015 WL 9258075, at \*6 (stating that "merely re-drafting" the certification is not sufficient to ensure completeness of the administrative record). Accordingly, Plaintiff has overcome the presumption of completeness.

### B. Plaintiff Has Specifically Identified the Omitted Materials and Has Articulated Reasonable, Non-Speculative Grounds for its Belief that the Documents Were Considered but Not Included

A plaintiff may also overcome the presumption of completeness by: (1) identifying the allegedly omitted materials with sufficient specificity; and (2) identifying reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record. *Sierra Club*, 2018 WL 3126401, at \* 2. Plaintiff has specifically identified ten documents that it believes were omitted by Defendants in their preparation of the administrative record. Dkt. 42-1 ("Treece Decl.") ¶¶ 4-7, 10, 11, 13, 14, 16, 17. In addition to these ten documents, Plaintiff has identified a distinct category of documents – drafts and discussions of NMFS' scientific reports – that it contends was omitted by Defendants. Dkt. 42 at 17-18. The Court finds that Plaintiff has identified the allegedly omitted materials with sufficient specificity as required. *See Sierra Club*, 2018 WL 3126401, at \* 2. The remaining question is whether Plaintiff has identified reasonable, non-speculative grounds for its belief that these documents were considered by NMFS in the formulation of the Rule.

////

////

5

### 1. Scientific Research and Presentations That NMFS Scientists and Others Developed and Presented to NMFS Officials

The first category of documents Plaintiff seeks to include in the administrative record contains "various materials presented to the [Pacific Fishery Management] Council ("PFMC") as well as materials presented at the scientific workshop hosted by NMFS's own Southwest Fisheries Science Center ("SWFSC") concerning issues of anchovy management raised by the 2019 Catch Rule." Dkt. 42 at 9. Plaintiff contends that "NMFS staff involved in developing the 2019 Catch Rule participated in each of the [PFMC] meetings and the [SWFSC]'s 2018 scientific workshop on using acoustic trawl survey data in anchovy management" and that "NMFS scientists authored many of the documents." *Id*. Additionally, Plaintiff contends that these documents "inform[ed] the agency's understanding of issues directly relevant to the 2019 Catch Rule, including: data on anchovy abundance over time, discussions of data sources used to inform catch limits, critiques of the static management approach adopted in the 2019 Catch Rule, and the requirement to account for the needs of marine predators in setting catch limits." *Id*. Plaintiff identifies three subcategories of documents (*Id*. at 10-15) and the Court addresses each subcategory below.

#### a. Materials Regarding Anchovy Abundance Data, Estimates, and Survey Methodology Presented at PFMC Meetings

Plaintiff first seeks to include six documents[1] regarding "anchovy abundance data, estimates, and survey methodology" that were presented to and discussed at PFMC meetings. Dkt. 42 at 10. Plaintiff also seeks the audio recordings and transcripts from the PFMC meetings that reflect the discussion of these materials. *Id*. at 11. Plaintiff contends that these documents were created in response to PFMC requests and were developed and presented by NMFS scientists to inform PFMC about the acoustic trawl survey. *Id*. Additionally, five of these documents were included in a briefing book provided to NMFS. Dkt. 45 at 6.

Though Defendants contend that Plaintiff failed to offer evidence that any of these documents were directly or indirectly considered by NMFS during the creation of the Rule (Dkt. 44 at 15), this Court finds otherwise. Plaintiff has offered persuasive evidence that these six

---

[1] Plaintiff originally sought to include Treece Decl. Exs. B-E and G-I. The Parties have since agreed that Exhibit G is already contained in the record.

documents were considered by Defendants during the formation of the Rule. First, Plaintiff presented evidence that these documents were presented to PFMC during its April 2017, September 2017, November 2017, and April 2018 meetings, during the development of the Rule. *See Oceana*, 2017 WL 2670733, at *6; Dkt. 42 at 11-14; Treece Decl. Exs. B-E, H, I. Plaintiff also noted that NMFS is part of the PFMC and that NMFS representatives, specifically those responsible for the development of the Rule, received these documents. Dkt. 42 at 10. Second, Plaintiff averred that four[2] of these documents were authored by NMFS, the same agency that developed the Rule challenged in this case. *See Oceana,* 2017 WL 2670733, at *6-7; Dkt. 42 at 12-13.

With respect to Exhibit E, the only document that was not directly provided to NMFS in a briefing book, Defendants asserted that it could not have been considered because it was only cited in a document that was presented to PFMC and the mere citation of a document in another record document is not sufficient to meet Plaintiff's burden. Dkt. 44 at 17. Plaintiff has, however, offered evidence that Exhibit E was presented at a 2018 SWFSC Workshop titled "Acoustic Trawl Methodology Review for Use in Coastal Pelagic Species Stock Assessments," which Joshua Lindsay, "the lead NMFS staff member in charge of developing the 2019 Catch Rule," attended. *See Oceana,* 2017 WL 2670733, at *3; Dkt. 42 at 12-13.

The Court is not persuaded by Defendants' arguments that the contents of these requested documents are addressed by other documents already contained in the record or that Plaintiff should have submitted these documents when it submitted its comments on the proposed Rule. Dkt. 44 at 17-18. Rather, for the reasons set forth above, the Court finds that Plaintiff has identified reasonable, non-speculative grounds for its belief that these six documents should be part of the administrative record and NMFS must include them.

There is, however, an exception to the Court's finding: the associated audio recordings and transcripts that reflect the discussion of these six documents. Plaintiff argues that the audio recordings and transcripts should be included because they "reflect the Council's—including

---
[2] Treece Decl. Exs. D, E, H, I.

7

NMFS's—consideration of those materials." Dkt. 42 at 11. Defendants do not address these items in their opposition. Nevertheless, Plaintiff's statement alone does not provide the requisite reasonable or non-speculative grounds for inclusion in the administrative record.

### b. Materials Concerning Anchovy Management Presented at PFMC Meetings

Plaintiff also seeks to include two documents[3] that were received and considered by PFMC in April 2019. Dkt. 42 at 14. Plaintiff represents that these documents analyze "the status of two key forage species, Pacific sardine and Pacific mackerel" and that the statuses of such forage species are "relevant to whether the 2019 Catch Rule and the management approach it uses account for the needs of marine predators when setting catch limits for anchovy." *Id*. at 14-15. Plaintiff also argues that these two documents "underscore NMFS's ability to use [ATS] data for management, including regularly updating catch limits to reflect the status of anchovy and other coastal pelagic species populations. *Id*. at 15. Plaintiff also points to the Rule itself, which states that NMFS did not find any "credible scientific record" for Oceana's comments that prey dependency dictates reductions to the catch limits. *Id*. at 15 (citing AR 264 at 16387, 16391). As these materials were presented at PFMC meetings, the Court finds that Plaintiff has identified reasonable, non-speculative grounds for its belief that these two documents were considered by NMFS in its formulation of the Rule for the same reasons stated above. *See supra* Section III.B.1.a. NMFS must also include these documents in the administrative record.

### c. Materials presented at the 2018 SWFSC Workshop

Plaintiff also seeks to include two documents[4] that were presented at a 2018 SWFSC workshop titled "Acoustic Trawl Methodology Review for Use in Coastal Pelagic Species Stock Assessments." Dkt. 42 at 13-14. Plaintiff contends that NMFS scientists "developed most of the materials presented and discussed at the workshop" and that "Joshua Lindsay, the lead NMFS staff member in charge of developing the 2019 Catch Rule," attended the workshop. *Id*. at 13 (citing

---

[3] Treece Decl. Exs. N, O.
[4] Plaintiff originally sought to include Treece Decl. Exs. J-M but the Parties have agreed that Exhibits J and M are contained in the record.

8

AR 383 at 18859). Plaintiff also argues that these two documents, both of which were produced by NMFS scientists, are "directly relevant to the issues at hand" and that NMFS "clearly considered them" during the creation of the Rule. *Id*. at 14. Defendants argue, in part, that "the mere fact that NMFS scientists prepared [these documents] does not show that the agency decision-makers considered them for the 2019 Rule." Dkt. 44 at 18. Defendants concede that the documents "concern anchovy abundance and the acoustic trawl surveys," but argue that the contents of these requested documents are addressed by other documents already contained in the record. *Id*. at 19.

While this Court acknowledges Defendants' argument that the fact that NMFS scientists prepared these documents is not, by itself, sufficient to show that the documents were considered during the formulation of the Rule, Plaintiff has offered additional persuasive evidence to support its claim. Plaintiff has demonstrated that Mr. Lindsay attended the workshop at which these materials were presented. Dkt. 42 at 13 (citing AR 383 at 18859). As Mr. Lindsay was "the lead NMFS staff member in charge of developing the 2019 Catch Rule," Plaintiff has established that these two documents were considered by NMFS but not included in the record. *See Oceana,* 2017 WL 2670733, at *3; Dkt. 42 at 13-14. NMFS must include these documents from the 2018 SFSC Workshop in the administrative record.

### 2. NMFS Scientists' Communications, Analyses, and Draft Assessments of the Science Considered in the Rule

The second category of documents Plaintiff seeks to include consists of NMFS scientists' communications, analyses, and draft assessments regarding the science that NMFS considered in formulating the Rule. Dkt. 42 at 18; Dkt. 45 at 10. Specifically, Plaintiff seeks: (1) "all reports reflecting estimates of anchovy abundance using acoustic trawl survey ("ATS") data for each year such estimates were developed;" (2) "drafts of these reports;" and (3) "email communications or other correspondence, meeting notes, or memoranda concerning the analyses contained in these reports as well as edits to the reports." Dkt. 42 at 18. Plaintiff argues that NMFS used the data detailed in its 2016, 2017, and 2018 ATS reports to set the catch limit values in the Rule. *Id*. at 17. Plaintiff contends that these reports, all of which were produced by NMFS' scientists at the

SWFSC, are critical because "NMFS points to these three reports as the primary source for its claims that its 2019 Catch Rule was based on the best available science," but the "administrative record contains no communications, meeting notes, analyses, emails, or drafts of these reports demonstrating what factors the agency's scientists considered, how the[y] . . . weighed or combined those factors in producing these reports, or whether and how the scientists' interpretation of the data did or did not change over time." *Id*. at 17-18 (citing AR 264 at 16386-87).

Defendants have agreed to include the final copies of the ATS reports but have declined to include drafts, edits, emails, meeting notes, and other documents (categories 2 and 3 above) because NMFS did not consider such documents in developing the Rule. Dkt. 44 at 20. Defendants contend that "NMFS staff that prepared the 2019 Rule did not consider every scrap of paper ever generated by the SWFSC regarding the 2016-18 acoustic trawl estimates." *Id*. at 21 (citing Dkt. 44-2 ¶ 12).

It is well-settled that "in many cases[,] internal comments, draft reports, inter- or intra-agency emails, revisions, memoranda, or meeting notes will inform an agency's final decision." *Inst. for Fisheries Res. v. Burwell*, No. 16-cv-01574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017). Indeed, "internal materials are part of the 'universe of materials' considered by the agency . . . and must be included in the administrative record unless omitted on the basis of privilege." *Ctr. for Envtl. Health*, 2019 WL 3852493, at *2 (citations omitted). Other courts in this Circuit have cautioned that "[a]llowing agencies discretion to determine which internal communications to include or withhold, without explanation, . . . 'would invite all manner of mischief.'" *S.F. Bay Conservation and Dev. Comm'n v. U.S. Army Corps of Eng'rs*, No. 16-cv-05420-RS (JCS), 2018 WL 3846002, at *7 (N.D. Cal. Aug. 13, 2018) (citing *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2018 WL 1210551, at *6 (N.D. Cal. Mar. 8, 2018)). The Ninth Circuit has emphasized that "[t]he whole record includes everything that was *before the agency* pertaining to the merits of its decision." *Portland Audubon Soc'y v. Or. Lands Coalition*, 984 F.2d 1534 (9th Cir. 1993) (emphasis added and internal quotation marks omitted). Thus, "[t]he 'whole record' . . . includes documents that 'literally

pass[ed] before the eyes of the final agency decision maker' as well as those considered and relied upon by subordinates who provided recommendations to the decisionmaker." *Regents*, 2018 WL 1210551, at *2 (alterations in original and citations omitted).

Given this standard, Defendants' argument that they "did not consider every scrap of paper ever generated by the SWFSC" does not withstand scrutiny. If such "scrap[s] of paper" were used by SWFSC scientists to develop recommendations for NMFS, those papers must be included in the record. Despite Defendants' arguments to the contrary, Plaintiff has in fact offered evidence that Defendants considered the draft ATS reports, email and other correspondence, meeting notes, and memoranda while creating the Rule. The ATS reports are mentioned throughout the text of the Rule (*see* 84 Fed. Reg. 25197-25199) and many of the documents already contained in the record discuss the ATS data. Plaintiff also notes that PFMC meeting records indicate that NMFS was "well aware that its own scientists were analyzing and developing anchovy abundance estimates from these acoustic trawl surveys." Dkt. 42 at 22. Plaintiff argues that in the previous *Oceana* case, this Court ordered Defendants to include "ATS data from summer 2015, analyses of that data (including communications discussing or conveying such analyses), and drafts of the ATS paper that was presented to the Council on November 19, 2016." Dkt. 42 at 18 (quoting *Oceana, Inc*., 2017 WL 2670733, at *5).

Defendants argue that the previous case is distinguishable because there was no final ATS report and the Court "had no basis to believe that only a single final document . . . was considered by the agency" while in this case, Defendants have stated that NMFS considered only the final reports in its development of the Rule. Dkt. 44 at 20. This Court did not ground its finding in the previous case on the lack of a final report, however, so Defendants' argument is not convincing. Defendants also attempt to distinguish the previous case by arguing that it involved a rule that was "produced over a longer period" and thus "it was more plausible" that NMFS "might have considered such work-in-process materials in the absence of a final report," while the current Rule "was prepared on a much more compressed schedule." *Id*. The Court is similarly unconvinced.

Accordingly, the administrative record must include the ATS materials that existed as of May 31, 2019, including all reports reflecting estimates of anchovy abundance using ATS data for

11

2016, 2017, and 2018; drafts of these reports; and email communications or other correspondence, meeting notes, or memoranda regarding the analyses contained in these reports and their drafts.

### C. Defendants' Request to Limit the Use of Documents

Defendants ask this Court to "make clear" that "none of the documents at issue, including those in the record of the 2016 rule, that post-date NMFS' approval of the challenged FMP provisions may be used for purposes of Plaintiff's challenge to those provisions." Dkt. 44 at 24. This Court declines to make such a restriction as Defendants' request does not go to the proper scope of the dispute before this Court.

## IV. CONCLUSION

For the reasons detailed above, the Court **ORDERS** Defendants to complete the administrative record **within thirty days of this order** with the following documents:

1. The following scientific research and presentations that were presented to NMFS officials **excluding any audio recordings or transcripts**:
   - Treece Decl. Exhibit B
   - Treece Decl. Exhibit C
   - Treece Decl. Exhibit D
   - Treece Decl. Exhibit E
   - Treece Decl. Exhibit H
   - Treece Decl. Exhibit I
   - Treece Decl. Exhibit K
   - Treece Decl. Exhibit L
   - Treece Decl. Exhibit N
   - Treece Decl. Exhibit O
2. All data obtained through NMFS' ATS activities prior to the publication of the Rule and the following materials that existed as of May 31, 2019: analyses of that data, including email communications or other correspondence, meeting notes, or memoranda; and drafts of the final ATS reports.

Defendants have not argued that any of these materials are privileged. If Defendants withhold any

of these documents from the record on the basis of privilege, they must add them to a privilege log no later than the date set forth above.

**SO ORDERED.**

Dated: January 31, 2020

*Susan van Keulen*
SUSAN VAN KEULEN
United States Magistrate Judge