1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11
12

OCEANA, INC.,

Case No. 19-CV-03809-LHK

13

Plaintiff,

**ORDER DENYING MOTION TO COMPEL**

14

v.

Re: Dkt. No. 88

15

WYNN COGGINS, et al.,

16

Defendants.

17
18

Plaintiff Oceana, Inc. ("Plaintiff") brings this action against Defendant Wynn Coggins, in

19

her official capacity; Defendant National Oceanic and Atmospheric Administration ("NOAA");

20

and Defendant National Marine Fisheries Service ("NMFS") (collectively, "Government

21

Defendants"). On September 2, 2020, the Court granted in part and denied in part the parties'

22

motions for summary judgment ("the September 2, 2020 Order"). *Oceana v. Ross*, 483 F. Supp. 3d

23

764 (N.D. Cal. 2020). Before the Court is Plaintiff's motion to compel compliance with the

24

September 2, 2020 Order. Having considered the parties' submissions, the relevant law, and the

25

record in this case, the Court DENIES Plaintiff's motion to compel.

26

**I.      BACKGROUND**

27

Below, the Court summarizes the most relevant parts of the instant case. The September 2,

28

1

2020 Order provides a more fulsome description of the background of the instant case. *See Oceana*, 483 F. Supp. 3d at 767–774.

In response to overfishing concerns, Congress enacted the Magnuson-Stevens Fishery Conservation and Management Act of 1976 ("Magnuson-Stevens Act"). The Magnuson-Stevens Act created eight Regional Fishery Management Councils and requires the Councils to create fishery management plans ("FMPs") aimed at preventing overfishing. 16 U.S.C. §§ 1852(h)(1), 1801(b)(4), 1854(a)(3). The Magnuson-Stevens Act sets ten "national standards for fishery conservation and management," the first two of which are relevant to the instant case. 16 U.S.C. § 1851(a). National Standard One requires that "[c]onservation and management measures shall prevent overfishing while achieving, on a continuing basis, the optimum yield from each fishery for the United States fishing industry." 16 U.S.C. § 1851(a)(1). National Standard Two requires that "[c]onservation and management measures shall be based upon the best scientific information available." 16 U.S.C. § 1851(a)(2).

The Magnuson-Stevens Fishery Conservation and Management Reauthorization Act of 2006 requires that each FMP "establish a mechanism for specifying annual catch limits ["ACLs"] in the plan . . . at a level such that overfishing does not occur in the fishery." 16 U.S.C. § 1853(a)(15). ACLs are set with reference to the overfishing limit ("OFL") and the acceptable biological catch ("ABC"). The OFL is a quantifiable factor that is "used to determine if overfishing has occurred, or if the stock or stock complex [of a fishery] is overfished." 50 C.F.R. § 600.310(e)(2)(i)(A). The ABC is "a level of a stock or stock complex's annual catch that accounts for the scientific uncertainty in the estimate of OFL and any other scientific uncertainty." *Id.* § 600.310(f)(2)(ii).

On April 8, 2019, the NMFS published a proposed rule in the Federal Register to set an ACL for the central population of the anchovy. AR 292:17233–17236. The NMFS proposed an OFL of 94,290 metric tons ("mt"), an ABC of 23,573 mt and an ACL of 23,573 mt. *Id.* at 17233–17234.

On May 31, 2019, the NMFS published a final rule in the Federal Register ("the 2019

2

Catch Rule"). AR 264:16386–16392. The 2019 Catch Rule averaged anchovy abundance estimates from the three preceding years (2016–2018) and arrived at an average biomass of 394,519 mt. *Id*. at 16387–16388. The 2019 Catch Rule calculated the OFL by multiplying the average biomass from 2016–2018 by an estimate of the rate of fishing mortality for anchovy at MSY (0.239). *Id*. at 16387. This yielded an MSY and OFL of 94,290 mt. *Id*. at 16387–16388. The NMFS then calculated an acceptable biological catch ("ABC") of 23,573 by reducing the OFL by 75% pursuant to Amendment 13. *Id*. The NMFS then set the annual catch limit ("ACL") to equal the ABC at 23,573 mt. *Id*.

On June 28, 2019, Plaintiff filed a complaint that challenged the OFL, ABC, and ACL set in the 2019 Catch Rule as well as Amendments 8 and 13 to the Pacific Council's Coastal Pelagic Species Fishery Management Plan ("CPS FMP"). ECF No. 1. On August 23, 2019, the Court granted California Wetfish Producers Association and Monterey Fish Company Inc.'s ("Intervenor-Defendants") unopposed motion to intervene. ECF No. 27.

On March 17, 2020, Plaintiff filed a motion for summary judgment. ECF No. 59. On April 20, 2020, Intervenor-Defendants and Government Defendants filed their cross-motions for summary judgment. ECF Nos. 63, 64.

On September 2, 2020, the Court granted in part and denied in part Plaintiff's motion for summary judgment and Government Defendants' and Intervenor Defendants' cross-motions for summary judgment. *Oceana*, 483 F. Supp. 3d at 764. As to Plaintiff's challenge to Amendments 8 and 13 to the CPS FMP, the Court granted Government Defendants' and Intervenor Defendants' cross-motions for summary judgment. *Id*. at 778–79. As to Plaintiff's challenge to the OFL, ABC, and ACL set in the 2019 Catch Rule, the Court granted Plaintiff's motion for summary judgment. *Id*. at 779–88.

Specifically, the Court concluded that the OFL, ABC, and ACL set in the 2019 Catch Rule were arbitrary and capricious for two reasons. First, the OFL, ABC, and ACL set in the 2019 Catch Rule were not based on the best scientific information available because the NMFS dismissed two studies, MacCall (2016) and Thayer *et al*. (2017). *Id*. at 780–83. Because the 2019

3

1  Catch Rule was not based on the best information available, the Court concluded that the NMFS

2  "offered an explanation for its decision that runs counter to evidence before the agency" and failed

3  to "articulate a rational connection between the facts found and the conclusions reached." *Id*. at

4  783 (quotation omitted).

5      Second, the OFL, ABC, and ACL set in the 2019 Catch Rule did not prevent overfishing

6  because they set static OFL, ABC, and ACL values for an indefinite period of time, and the

7  evidence did not demonstrate that those limits would prevent overfishing. *Id*. at 783–88.

8  Accordingly, the NMFS "offered an explanation for its decision that runs counter to evidence

9  before the agency." *Id*. at 788 (quotation omitted).

10     Because the Court concluded that the 2019 Catch Rule was arbitrary and capricious, the

11  Court vacated the 2019 Catch Rule and remanded the 2019 Catch Rule "for further action

12  consistent with this order." *Id*. at The Court "decline[d] Plaintiff's invitation to 'require' the

13  NMFS 'to issue a new catch rule [that] ensure[s] . . . annual limits are adjusted annually.'" *Id*. The

14  Court declined to "dictate the substance of any new catch rule on remand." *Id*. The Court ordered

15  Defendants to "promulgate a new rule in compliance with the Magnuson-Stevens Act and the

16  APA within 120 days." *Id*.

17     After entering the September 2, 2020 Order, the Court entered judgment in the instant case.

18  ECF No. 78. On October 30, 2020, Defendants appealed the September 2, 2020 Order to the Ninth

19  Circuit. ECF No. 81. The Ninth Circuit has not yet issued a decision.

20     On November 18, 2020, the NMFS published a proposed rule in the Federal Register to set

21  an ACL for the central population of the anchovy. 85 Fed. Reg. 73446. The NMFS proposed an

22  OFL of 119,153 mt, an ABC of 29,788 mt, and an ACL of 25,000 mt. 85 Fed. Reg. at 73446.

23     On December 31, 2020, the NMFS published a final rule in the Federal Register ("the 2020

24  Catch Rule"). 85 Fed. Reg. 86855. The 2020 Catch Rule set an OFL of 119,153 mt, an ABC of

25  29,788 mt, and an ACL of 25,000 mt. 85 Fed. Reg. at 86861.

26     On January 29, 2021, Plaintiff filed the instant motion to compel compliance with the

27  September 2, 2020 Order. ECF No. 88 ("Mot."). On February 3, 2021, Defendants filed an

28
Case No. 19-CV-03809-LHK
ORDER DENYING MOTION TO COMPEL

1   opposition. ECF No. 91 ("Opp'n"). On February 19, 2021, Plaintiff filed a reply. ECF No. 93

2   ("Reply").

3           On January 29, 2021, the same day that Plaintiff filed the instant motion, Plaintiff also

4   filed a new lawsuit challenging the 2020 Catch Rule. Case No. 21-CV-00736-LHK, ECF No. 1.

5   On April 1, 2021, the Court concluded that the instant case was related to Plaintiff's new lawsuit.

6   ECF No. 96. On April 6, 2021, Government Defendants filed an answer and a notice stating that

7   the administrative record had been filed. Case No. 21-CV-00736, ECF Nos. 23, 24.

8   **II.     LEGAL STANDARD**

9           Federal courts have "inherent power to enforce compliance with their lawful orders."

10  *Shillitani v. United States*, 384 U.S. 364, 370 (1966). This power extends "to the specific context

11  of a mandate issued to a federal agency." *California v. United States Dep't of Labor*, 155 F. Supp.

12  3d 1089, 1095–96 (E.D. Cal. 2016) (citing *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C.

13  2014). "Should an agency neglect the orders of a federal court, an order enforcing the original

14  mandate is . . . 'particularly appropriate.'" *Id.* (quoting *Int'l Ladies' Garment Workers' Union v.*

15  *Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984)).

16          A court should grant a motion to enforce a final judgment "when a prevailing plaintiff

17  demonstrates that a defendant has not complied with a judgment entered against it, even if the

18  noncompliance was due to misinterpretation of the judgment." *Heartland Hosp. v. Thompson*, 328

19  F. Supp. 2d 8, 11 (D.C. Cir. 2004). "Success on a motion to enforce a judgment gets a plaintiff

20  only 'the relief to which [the plaintiff] is entitled under [its] original action and the judgment

21  entered therein.'" *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 29 (D.C. Cir. 2005) (quoting

22  *Watkins v. Washington*, 511 F.2d 404, 406 (D.C. Cir. 1975)). However, if "the plaintiff has

23  received all relief required by that prior judgment, the motion to enforce is denied." *Id*.

24  **III.    DISCUSSION**

25          In the instant motion, Plaintiff moves to compel compliance with the September 2, 2020

26  Order because the OFL, ABC, and ACL set in the 2020 Catch Rule violates the September 2, 2020

27  Order. Mot. at 8–16. Plaintiff requests that the Court find NMFS in contempt of the September 2,

28
5

1  2020 Order; require NMFS to issue a new proposed and final rule correcting the OFL, ABC, and

2  ACL; and order NMFS to amend the CPS FMP. *Id.* at 4–5.

3        Defendants contend that the Court cannot invalidate the 2020 Catch Rule based on the

4  September 2, 2020 Order, which pertains to the 2019 Catch Rule. Opp'n at 2–4. For the reasons

5  below, the Court agrees.

6        The Magnuson-Stevens Act adopts the Administrative Procedure Act's ("APA") "standard

7  for judicial review of agency action set forth in 5 U.S.C. § 706(2)(A)." *Or. Trollers Ass'n v.*

8  *Gutierrez*, 452 F.3d 1104, 1116 (9th Cir. 2006) (citing 16 U.S.C. § 1855(f)(1)). Under the APA,

9  judicial review is based on the administrative record that was before the agency at the time the

10  action was taken. *See* 5 U.S.C. § 706(2)(A) ("In making the foregoing determinations, the court

11  shall review the whole record of those parts of it cited by a party."); *Citizens to Pres. Overton*

12  *Park*, 401 U.S. at 410 ("[R]eview is to be based on the full administrative record that was before

13  the Secretary at the time he made his decision."). The court must "determine whether or not as a

14  matter of law the evidence in the administrative record permitted the agency to make the decision

15  it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985).

16        The court must set aside an agency action where the action is "arbitrary, capricious, an

17  abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). APA review

18  is deferential and narrow, and "[t]he court is not empowered to substitute its judgment for that of

19  the agency." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated*

20  *on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977). "If the court determines that the

21  agency's course of inquiry was insufficient or inadequate, it should remand the matter to the

22  agency for further consideration and not compensate for the agency's dereliction by undertaking

23  its own inquiry into the merits." *Asarco v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980); *accord N.*

24  *Air Cargo v. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012) ("When a district court reverses

25  agency action and determines that the agency acted unlawfully, . . . the appropriate course is

26  simply to identify a legal error and then remand to the agency, because the role of the district court

27  in such situations is to act as an appellate tribunal."). "[T]o order the agency to take specific

28  
6

Case No. 19-CV-03809-LHK
ORDER DENYING MOTION TO COMPEL

1    actions is reversible error." *Flaherty*, 17 F. Supp. 3d at 57.

2           In sum, APA review of an agency is based on the administrative record of that agency

3    action. *See* 5 U.S.C. § 706(2)(A); *Citizens to Pres. Overton Park*, 401 U.S. at 410. If the court

4    concludes that the agency action violates the APA, the normal course is to remand the matter to

5    the agency for further consideration rather than dictating the agency's future actions. *Asarco*, 616

6    F.2d at 1160.

7           "It is both logical and precedented that an agency can engage in a rulemaking to correct a

8    prior rule which a court has found defective." *N.A.A.C.P., Jefferson County Branch v. Donovan*,

9    737 F.2d 67, 72 (D.C. Cir. 1984). When the agency makes a new rule and the plaintiffs,

10   contending that the new rule violates the court's prior order, move to enforce the court's prior

11   order, several courts have denied the motion to enforce.

12          For example, in *Fund for Animals v. Norton*, the United States District Court for the

13   District of Columbia invalidated the National Park Service's 2003 Rule regarding winter use of

14   three parks and remanded to the agency. 390 F. Supp. 2d 12, 14 (D.D.C. 2005). The agency then

15   promulgated a 2004 Rule governing winter use of the three parks. *Id*. The plaintiffs moved to

16   enforce the court's earlier order on the grounds that the 2004 Rule failed to correct the deficiencies

17   that led the Court to vacate the 2003 Rule. *Id*. The court denied the plaintiffs' motion. *Id*. at 15.

18   The court observed that "[w]hile plaintiffs' motion is styled as one to 'enforce' the Court's

19   December 16, 2003 Order, it is in essence a challenge to the National Park Service's 2004

20   Temporary Winter Use Plan—not the 2003 Decision that was the subject of the 2003 Order." *Id*.

21   The court stated that "[t]he 2004 Decision is a new "final agency action" resulting from an entirely

22   new rule making process; it imposes different substantive requirements, involves a different scope,

23   and is based upon a different administrative record . . . not before the Court in this case." *Id*. Thus,

24   the court concluded that "the proper avenue for plaintiffs' arguments is a new lawsuit squarely

25   challenging the validity of the 2004 Decision." *Id*.

26          Similarly, in *National Wildlife Federation v. U.S. Army Corps. of Engineers*, the court

27   found that a 1998 Record of Decision by the U.S. Army Corps of Engineers was unlawful and

28
                                                    7

United States District Court
Northern District of California

1    remanded to the agency to issue a new Record of Decision. 2001 WL 34045735 (D. Or. Aug. 21,

2    2001). After the agency issued a new Record of Decision in 2001, the plaintiffs moved the court to

3    declare that the agency had failed to comply with its prior order, to invalidate the agency's 2001

4    Record of Decision, and to order the agency to issue a new Record of Decision. *Id.* at *1.

5    Alternatively, the plaintiffs moved for leave to amend their complaint to challenge the 2001

6    Record of Decision. *Id.* The court denied the plaintiffs' motion to enforce the judgment but

7    granted the plaintiffs' motion for leave to amend the complaint. *Id.* The court stated that it would

8    "address the plaintiffs' complaints relating to the merits of the May 2001 [Record of] Decision

9    when an amended complaint is filed and the administrative record is available for examination."

10   *Id.*

11          In *State of California v. United States Department of Interior*, another court in this district

12   came to a similar decision. 2020 WL 1496278 (N.D. Cal. Mar. 16, 2020), *report &*

13   *recommendation adopted* (N.D. Cal. July 30, 2020). In that case, the court vacated the Office of

14   Natural Resources Revenue's Final Repeal of its Valuation Rule based on the agency's failure to

15   comply with the APA. *Id.* at *1–*2. As a result of the vacatur of the Final Repeal, the Valuation

16   Rule was left in effect. *Id.* at *2. The agency later postponed implementation of the Valuation

17   Rule. *Id* at *3. The intervenor-plaintiffs moved for enforcement of the court's prior order. *Id.* The

18   court concluded that the relief sought by the movants was beyond the scope of the court's prior

19   order, which had simply vacated the Final Repeal and left the Valuation Rule in place. *Id.* at *4.

20   The court emphasized that the prior order did not address the postponement. *Id.* The court stated

21   that, if the movants wanted to raise the postponement, they would "have to file a new lawsuit

22   challenging the postponement." *Id.*

23          Like the plaintiffs in these cases, Plaintiff is moving to enforce a court order, which

24   concluded a prior rule was arbitrary and capricious, based on Plaintiff's contention that a new rule

25   does not comply with the court order. Indeed, the 2020 Catch Rule is a new rule because it

26   resulted from a different rulemaking process, has a different administrative record, and sets a

27   different OFL, ABC, and ACL than the 2019 Catch Rule. *Compare* AR 264:16387–16388 (2019

28   
     Case No. 19-CV-03809-LHK
     ORDER DENYING MOTION TO COMPEL

United States District Court
Northern District of California

Catch Rule) (setting an OFL of 94,200 mt, an ABC of 23,573 mt, and an ACL of 23,573 mt) *with* 85 Fed. Reg. at 86861 (2020 Catch Rule) (setting an OFL of 119,153 mt, an ABC of 29,788 mt, and an ACL of 25,000 mt). Like other courts that have considered this issue, the Court concludes that Plaintiff cannot move to enforce a court order that concluded that a prior rule was arbitrary and capricious, but rather must challenge the new rule based on its own administrative record.[1]

In the September 2, 2020 Order, the Court reviewed the 2019 Catch Rule based on the administrative record that was before NMFS when NMFS promulgated the 2019 Catch Rule. The Court assessed whether "the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co.*, 753 F.2d at 769–70. The Court concluded that the evidence in the administrative record did not permit NMFS to make the decision it did because NMFS's decision ran counter to the evidence that was before the agency. *Oceana*, 483 F. Supp. 3d at 783, 788. The Court thus vacated the 2019 Catch Rule and remanded to the agency *Id*. at 788. However, the Court declined to "dictate the substance of any new catch rule on remand." *Id*. Specifically, the Court "decline[d] Plaintiff's invitation to 'require' the NMFS 'to issue a new catch rule [that] ensure[s] . . . annual limits are adjusted annually.'" *Id*. The Court ordered Defendants to "promulgate a new rule in compliance with the Magnuson-Stevens Act and the APA within 120 days." *Id*.

In the instant motion, Plaintiff moves to compel compliance with the September 2, 2020 Order. Plaintiff contends that Defendants have failed to comply with the September 2, 2020 Order based on Defendants' issuance of the 2020 Catch Rule. Mot. at 8–16. However, the 2020 Catch

---

[1] Plaintiff contends that *Fund for Animals* is distinct from the instant case for two reasons. First, in *Fund for Animals*, the previous order "was narrowly grounded on APA and NEPA violations regarding the 2003 rule making process and did not reach plaintiffs' substantive legal challenges." 390 F. Supp. 2d at 15. However, in the instant case, the September 2, 2020 Order was also grounded in APA violations. *Oceana*, 483 F. Supp. at 783, 788. Second, in *Fund for Animals*, the new rule "imposes different substantive requirements, involves a different scope, and is based upon a different administrative record." *Id*. However, in the instant case, the 2020 Catch Rule also imposes a different catch limit, resulted from a new rulemaking, and is based on a new administrative record. *Compare* AR 264:16387–16388 (2019 Catch Rule) (setting an OFL of 94,200 mt, an ABC of 23,573 mt, and an ACL of 23,573 mt) *with* 85 Fed. Reg. at 86861 (2020 Catch Rule) (setting an OFL of 119,153 mt, an ABC of 29,788 mt, and an ACL of 25,000 mt).

Case No. 19-CV-03809-LHK
ORDER DENYING MOTION TO COMPEL

1    Rule is beyond the scope of the September 2, 2020 Order. In the September 2, 2020 Order, the

2    Court invalidated the 2019 Catch Rule and remanded to the agency. *Oceana*, 483 F. Supp. 3d at

3    788; *see also Asarco*, 616 F.2d at 1160 ("If the court determines that the agency's course of

4    inquiry was insufficient or inadequate, it should remand the matter to the agency for further

5    consideration and not compensate for the agency's dereliction by undertaking its own inquiry into

6    the merits."). The Court expressly declined to "dictate the substance of any new catch rule on

7    remand." *Id.*; *see also Flaherty*, 17 F. Supp. 3d at 57 ("[T]o order the agency to take specific

8    actions is reversible error."). Accordingly, vacating the 2020 Catch Rule would expand the scope

9    of the Court's September 2, 2020 Order because it would dictate the substance of a new catch rule,

10   which the Court's September 2, 2020 Order expressly declined to do. *See State of California v.*

11   *United States Department of Labor*, 155 F. Supp. 3d at 1096 (denying the plaintiffs' request to

12   direct the agency to certify grants because the court's previous order remanded the matter to the

13   agency rather than instructing the agency to reach any particular result).

14          Moreover, the September 2, 2020 Order's analysis was specific to the 2019 Catch Rule and

15   its administrative record. Specifically, the September 2, 2020 Order concluded that the 2019 Catch

16   Rule was arbitrary and capricious because the 2019 Catch Rule ran counter to the evidence that

17   was before NMFS. *Oceana*, 483 F. Supp. 3d at 783, 788. That conclusion stemmed from the

18   Court's analysis of the administrative record for the 2019 Catch Rule, which included the evidence

19   before NMFS at the time the decision was made. *Id*. However, the 2020 Catch Rule has a new

20   administrative record, resulted from a new rulemaking process, and sets a different OFL, ABC,

21   and ACL than the 2019 Catch Rule did. *Compare* AR 264:16387–16388 (2019 Catch Rule)

22   (setting an OFL of 94,200 mt, an ABC of 23,573 mt, and an ACL of 23,573 mt) *with* 85 Fed. Reg.

23   at 86861 (2020 Catch Rule) (setting an OFL of 119,153 mt, an ABC of 29,788 mt, and an ACL of

24   25,000 mt). Without examining the administrative record for the 2020 Catch Rule, the Court

25   cannot know what evidence was before NMFS and thus cannot determine whether the 2020 Catch

26   Rule ran counter to the evidence that was before NMFS. *See Fund for Animals*, 390 F. Supp. 2d at

27   15 (denying plaintiffs' motion to enforce as to new rule because that rule's administrative record

28
     10

was not before the court).

Although several cases have held that plaintiffs cannot move to enforce a court order in these circumstances, Plaintiffs do not cite any cases where a court enforced a prior order, which invalidated a prior rule under the APA and remanded to the agency, as to a new rule. The Court has found one similar case, *International Ladies' Garment Workers' Union v. Donovan*. 733 F.2d at 921. In that case, the D.C. Circuit held that "the Secretary of Labor's rescission of homework restrictions in the knitted outerwear industry was arbitrary and capricious." *Id*. The D.C. Circuit vacated the rescission, such that the homework restrictions were reinstated, and remanded to the Secretary. *Id*. The Secretary then issued a final emergency rule suspending the effect of the court's decision for a period of 120 days. *Id*. at 921. The plaintiffs then filed a motion to compel compliance with the D.C. Circuit's decision. *Id*. After the district court concluded that it could not issue the relief sought by plaintiffs, the D.C. Circuit remanded to the district court for consideration of whether the emergency rule violated the terms the D.C. Circuit's mandate. *Id*. at 923. The D.C. Circuit observed that the Secretary had "simply reimplemented precisely the same rule that this court vacated as 'arbitrary and capricious' in its first decision." *Id.* The D.C. Circuit explained that the Secretary's attempt to suspend the court decision and reimplement the same exact rule conflicted with "the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding." *Id*.

The instant case is distinguishable from *Donovan*. Unlike *Donovan*, NMFS has not suspended the effect of the September 2, 2020 Order. Nor has NMFS "simply reimplemented precisely the same rule that this court vacated as 'arbitrary and capricious' in its first decision." *Id*. Rather, NMFS has issued a new rule with a new administrative record. *Compare* AR 264:16387–16388 (2019 Catch Rule) (setting an OFL of 94,200 mt, an ABC of 23,573 mt, and an ACL of 23,573 mt) *with* 85 Fed. Reg. at 86861 (2020 Catch Rule) (setting an OFL of 119,153 mt, an ABC of 29,788 mt, and an ACL of 25,000 mt). Accordingly, rather than moving to enforce a judgment that pertained to a different rule and a different administrative record, Plaintiff must challenge the 2020 Catch Rule based on its own administrative record. Seeming to acknowledge this, on the

11

same day that Plaintiff filed the instant motion to compel, Plaintiff filed a new lawsuit challenging the 2020 Catch Rule. Case No. 21-CV-00736, ECF No. 1. In that new lawsuit, Defendants have already filed the administrative record. Case No. 21-CV-00736, ECF No. 23. Plaintiff thus seems to acknowledge that Plaintiff must challenge the 2020 Catch Rule in a new lawsuit rather than in a motion to compel compliance with the Court's September 2, 2020 Order.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion to compel.

**IT IS SO ORDERED.**

Dated: May 5, 2021

*Lucy H. Koh*

LUCY H. KOH
United States District Judge

Case No. 19-CV-03809-LHK
ORDER DENYING MOTION TO COMPEL